**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| THERESA DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No.: 3:25-3898-MGL |
| | § | |
| STEFFANY E. BOYD, | § | |
| | § | |
| Defendant. | § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION**
**AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Theresa Davis brought this suit against Defendant Steffany E. Boyd, asserting a cause of action for malicious prosecution under 42 U.S.C. § 1983. Davis contends Boyd, an investigator with the Richland County Sheriff's Department, wrongfully caused an arrest warrant to be issued for Davis for obstruction of justice relating to an investigation into the shooting of Davis's two-year-old grandson, J.D. This Court has jurisdiction under 28 U.S.C. § 1331.

This matter is before the Court for review of the Report and Recommendation (the Report) of the United States Magistrate Judge suggesting to the Court Boyd's motion for summary judgment be granted. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

## II. FACTS AND PROCEDURAL HISTORY

In May of 2022, J.D. was found with a gunshot wound to the head. It is now believed he discovered the weapon and accidentally shot himself; fortunately he survived. Boyd responded to the scene, J.D.'s home, where he lived with his cousin N.D, his mother, and Davis. J.D.'s other cousin M.D. was also present at the time of the shooting. Another officer arranged for N.D. and M.D., both young minors, to be interviewed because they were potential witnesses.

The day following the shooting, Boyd called Davis and instructed her to refrain from speaking with the children about the event before they could be interviewed. Boyd observed the later interviews, which were conducted by another party. N.D. was eight years old at the time, and she made several comments during the interview, including:

- "I was so nervous and she kept telling me what to say."
- "She kept talking to me about it making me all nervous."
- "I don't think she told me what to say, no she didn't tell me what to say."
- "She said, 'Just say where you were. Say you were right beside the bed with your headphones on.'"
- "And I was like, I was gonna say that but she's making me say it . . . ."

Motion Ex. 2 ¶ 25; Motion Ex. 5 at 43:20, 44:05, 44:25, 53:55, 54:10 ("Interview"). It was clear to Boyd—and is clear to the Court from the recording of the interview— the "her" referred to by N.D. is Davis. Further, during the interview Davis texted N.D. asking about M.D.'s interview. Motion Ex. 2 ¶¶ 26-28.

Based on those observations, Boyd obtained an arrest warrant for Davis for obstruction of justice, which criminalizes "any act which prevents, obstructs, impedes, or hinders the administration of justice." *State v. Cogdell*, 257 S.E.2d 748, 750 (S.C. 1979) (citation omitted).

The warrant includes Boyd's affidavit describing N.D.'s statements Davis told her what to say and the fact Davis texted N.D. during the interview. Motion, Ex. 11.

Davis was arrested and the solicitor subsequently obtained an indictment from the grand jury. Ultimately, however, the solicitor dismissed the charge. Davis then brought this suit for malicious prosecution under the Fourth and Fourteenth Amendments.

In the Report, the Magistrate Judge recommends granting summary judgment in Boyd's favor because "Davis offers no . . . evidence from which a jury could infer that Boyd acted with knowing or reckless disregard for the truth in drafting the warrant affidavit." Report at 10.

Davis filed objections to the Report, to which Boyd filed a reply.

## III. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## IV. DISCUSSION AND ANALYSIS

A constitutional claim for malicious prosecution requires the plaintiff to prove "(1) the defendant seized him pursuant to legal process but without probable cause and (2) the criminal proceedings terminated in the plaintiff's favor." *Thurston v. Frye*, 99 F.4th 665, 673 (4th Cir. 2024)

(citing *Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014)). It is undisputed the charge was dismissed, and therefore only the first element is in question.

Where an arrest is based on a valid warrant, the plaintiff must show "the officer(s) deliberately or with a 'reckless disregard for the truth' made material false statements in the warrant application or omitted from that application 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the [application] misleading.'" *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 556 (4th Cir. 2017), *as amended* (Aug. 22, 2017) (internal citations omitted) (second alteration in original).

***A. Whether the Magistrate Judge improperly resolved a factual dispute***

Davis first challenges the Magistrate Judge's interpretation of the recorded video. She contends the meaning and interpretation of the interview is disputed—thus requiring a jury—because it "contains statements by N.D. that flatly negate the affidavit's sworn assertions." Objections at 6. Davis relies on N.D.'s following statements which appear in the recording: (1) "And I don't think she told me what to say"; (2) "I don't remember anything that she said"; (3) "So I'm telling them, I'm gonna tell them the truth."; and (4) "And I actually didn't know anything. . . . So my granny was right about that. I didn't know anything." Objections at 6.

The Court is unconvinced these statements "flatly negate" N.D.'s other statements made during the interview. Although some are contradictory, the contradiction fails to disprove probable cause or to prove Boyd intentionally or recklessly misled the magistrate who issued the arrest warrant.

Specifically, the affidavit within the arrest warrant states, "juvenile stated her granny told her what to say about incident." Motion Ex. 11. The Court has reviewed the recording, and this is indisputably one of the statements N.D. made. Interview at 43:20 ("[S]he kept telling me what to say.").

The warrant continued to reflect Davis told N.D. "to let them know she didn't see/hear anything." Motion Ex. 11. Although N.D. expressed it slightly differently, N.D. also clearly stated Davis told her to say she was "right beside the bed with [her] headphones on." Interview at 53:55 ("She said, 'Just say where you were. Say you were right beside the bed with your headphones on.'").

Because the shooting occurred outside the bedroom, if N.D. were beside the bed, she would have been unable to see the shooting. Thus, although N.D. failed to specifically claim Davis told her to say she "didn't see/hear anything," that is the meaning and effect of the statement N.D. did attribute to Davis. Because Boyd's descriptions in the warrant do reasonably appear in the interview, Davis's argument fails.

In a similar way, Davis objects to the following conclusion in the Report: "N.D.'s statements could reasonably lead an investigator to believe that Davis had spoken with N.D., at some length, about her version of what happened." Objections at 6 (quoting Report at 9). Davis argues, "Whether an investigator's belief was reasonable—and whether her sworn characterization of the interview was honest—are precisely the disputed questions the jury must answer by comparing the affidavit to the recording." Objections at 7.

For the reasons explained above—and as is addressed in further detail throughout the analysis of Davis's other objections—a reasonable jury would be unable to conclude Boyd intentionally or recklessly misled the magistrate judge in a material way such that, without her alleged falsehoods, the warrant would have lacked probable cause. *See Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) ("The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict."). Accordingly, this objection will be overruled.

***B. Whether the affidavit falsely reported N.D.'s statements***

Davis's second objection is as follows: "The R&R never addresses [the warrant] affidavit's most serious falsehood—the sworn assertion N.D. 'stated her granny told her what to say about [the] incident & to let them know she didn't see/hear anything.'" Objections at 7 (quoting Motion Ex. 11) (second alteration in original).

This argument must be rejected for the reasons already given. The first part of the statement was made nearly verbatim by N.D., and the second is an objectively reasonable restatement of another comment she did make. Having reviewed the recorded interview, the Court holds no reasonable jury could interpret these statements as a willful or reckless falsehood by Boyd. Accordingly, this objection will be overruled as well.

***C. Whether the affidavit's allegation about Davis's text message to N.D. was materially misleading***

Third, Davis objects to the Magistrate Judge's interpretation of the text message she sent to N.D. during the interview. The Magistrate Judge concluded—regardless of the precise content or purpose of the text message—"it was still a text to N.D. about the interviews, just as Boyd stated in the affidavit." Report at 9. Davis specifically objects the "R&R's literal-truth analysis never engages the omission theory" that Boyd, although technically truthful, failed to reflect the text message "was a caregiver's logistical question about pickup" rather than "about the substance of the interview." Objections at 9.

The affidavit within the warrant states: "During interview the def was texting 8yo juvenile pertaining to interview." Motion Ex. 11. It is undisputed Davis did text N.D. during the interview. When the interviewer learned of the message, she read it aloud as follows: "Where is [M.D.]? Is he done?" Interview at 1:16:10. In the light most favorable to Davis, it is arguable the text was

not "pertaining to the interview" as Boyd wrote in the affidavit. Arguably, the omitted explanation of the text message misleadingly "conveys . . . that the coaching continued in real time." Objections at 9.

Nonetheless, Davis is required to "demonstrate that the false statement or omission is material, 'that is, "necessary to the [neutral and disinterested magistrate's] finding of probable cause."'" *Humbert*, 866 F.3d at 556 (alteration in original) (quoting *Miller v. Prince George's Cnty., MD*, 475 F.3d 621, 628 (4th Cir. 2007)). Critically, if the warrant still established probable cause once the challenged inaccuracies are "'corrected,'" then "no civil liability lies against the officer." *Miller v. Prince George's Cnty., MD*, 475 F.3d 621, 628 (4th Cir. 2007) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)).

Although the description in the warrant is troubling, even if it were silent about the text message, the other statements included within it—which N.D. indisputably did say—still establish probable cause to believe Davis may have obstructed or hindered the investigation by speaking with N.D. because "[s]uccess in the effort to obstruct justice is not necessary to constitute the offense . . . ." *State v. Love*, 271 S.E.2d 110, 113 (S.C. 1980).

In other words, regardless of the text, there was still probable cause to believe Davis obstructed justice, and therefore Davis's claim fails. *See Miller*, 475 F.3d at 630-31 (stating reckless or intentional lies in a warrant affidavit can create liability "unless the untainted facts themselves provide probable cause"). Accordingly, this objection will be overruled, too.

***D. Whether the Magistrate Judge improperly relied on Boyd's "post hoc rationalization"***

In explaining the importance of N.D.'s interview to the then-ongoing investigation, the Magistrate Judge accepted Boyd's explanation "that Davis's act of talking with N.D. about the incident after being instructed not to 'basically tainted and made useful any information that was

obtained from N.D.,' who was one of the primary witnesses at the scene." Report at 8 (quoting Motion Ex. 2 ¶ 41). Davis objects this reasoning is "a post hoc rationalization that appears nowhere in the affidavit . . . ." Objections at 10.

For the reasons given above, probable cause would have existed regardless of the challenged inaccuracies or alleged omissions. Boyd's subjective intent is irrelevant—what matters is if the magistrate judge would have found probable cause based on a "corrected" affidavit. Moreover, it is unnecessary for an affidavit to articulate a particular legal theory connecting the facts to the crime. Rather, the affidavit needed only to establish probable cause. Therefore, this objection will be overruled in this regard.

Davis also argues, in effect, her conduct simply lacked criminality. She writes, "Telling a child to tell the truth is not an act done with intent to obstruct; neither is asking whether a toddler's interview has ended." Objections at 11. But in determining probable cause, "as the very name implies, we deal with probabilities." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). It was unnecessary for the affidavit to lay out facts sufficient to prove Davis committed the crime. Rather, it was necessary only to state "a reasonable ground for belief of guilt." *Brinegar*, 338 U.S. at 175; *see also Miller*, 475 F.3d at 630 ("It is also plain that an officer is not required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established.'" (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991))).

Boyd directly told Davis she was to refrain from speaking with N.D. or M.D. about the events because they were eye witnesses with potentially critical information about a largely unclear situation in which a small child was shot. She did so anyway, and N.D. reported—admittedly among other things—she thought Davis was telling her what to say. Particularly given what was

unknown, these circumstances plainly established probable cause to believe Davis was guilty of obstruction.

Moreover, Davis's argument she lacked the intent to obstruct is unavailing. As explained, despite Boyd's express instruction Davis keep from speaking with the children, N.D. stated she did so anyway. That deliberate conduct establishes probable cause she intended to impede the investigation. *See State v. Dean*, 161 S.E. 449, 450 (S.C. 1931) ("It is an axiom of the law that one intends the probable and natural consequences of his act."). Therefore, this objection will be overruled.

***E. Whether Boyd was intentionally or recklessly misleading***

Davis's fifth objection is the Magistrate Judge overlooked or ignored "the undisputed facts that . . . Boyd personally watched N.D.'s entire forensic interview as it occurred and listened to the recording again before preparing the warrant paperwork." Objections at 12. By doing so, according to Davis, Boyd must inherently "know[] her affidavit is false" or she acted "with a high degree of awareness" it is probably false. Obj. at 12 (quoting *Miller*, 475 F.3d at 627).

Again, this objection fails for the same reasons given above. Specifically, statements N.D. indisputably made during the interview, standing alone, could lead to the conclusion Davis tainted N.D.'s reliability as a witness. Thus, the statements established probable cause to believe Davis obstructed justice.

Davis argues the Magistrate Judge erred by concluding as a matter of law Boyd acted other than intentionally or recklessly. She explains, "It is undisputed that Ms. Boyd attended the interview. If her warrant affidavit—sworn days after she watched that interview and purporting to describe it—is false, that is strong and obvious evidence that she knew her statement was false." Objections at 13. This argument also fails because, as explained, a reasonable jury would be unable to conclude the affidavit was materially false.

Finally, to the extent Davis also objects to the Magistrate Judge's discussion of her allegedly "fabricated" history of conflict or altercations with Boyd, such discussion is simply without effect on the analysis herein. Thus, this objection will be overruled, as well.

### *F. Whether Boyd's remaining arguments fail*

Davis's sixth and final objection is to "preserve her arguments" the alternative grounds on which Boyd defends herself—the facial validity of the warrant, Davis's subsequent indictment, and qualified immunity—are unavailing. It is unnecessary to reach these issues as Davis has failed to present sufficient evidence on the underlying merits of her claim. Therefore, this objection will also be overruled.

## V. CONCLUSION

For the reasons explained above, and after a thorough review of the record in this case pursuant to the standard set forth above, the Court overrules Davis's objections, adopts the Report, and incorporates it herein. Therefore, Boyd's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Signed this 31st day of August, 2026, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE